3-0-9-0-9-4. People in the State of Maryland are identified by Justice DeColosi v. Dale Vontae Hearn. Appellant by Brian McNeil. Mr. McNeil. Good morning, Your Honors. Counselor. Good morning. My name is Brian McNeil and I represent Dale Vontae Hearn and I want to talk about both issues this morning, both the fitness as well as the Moore and Baltimore issues. With regard to fitness, the trial court ignored numerous indicia of unfitness in this case and took no action despite the existence of a bona fide doubt as to Mr. Hearn's fitness. The Code of Criminal Procedure imposes an important duty on trial courts to act as gatekeepers regarding fitness. The court has a sua sponte duty under the Code and must therefore be on the lookout for indicia of unfitness. Once it becomes aware of a bona fide doubt, it must hold a hearing before proceeding any further to determine that the defendant is actually fit. The court shirked that duty in this case where it was aware of numerous indicia showing a bona fide doubt and yet it took no action. Now, in arguing that there was no bona fide doubt in this case, the state has focused heavily on Mr. Hearn's trial behavior. That factor, however, was not indicative of unfitness. On the contrary, it shows that Mr. Hearn was unfit. First, after early on in the proceedings, he rejected a plea offer from the state and did it against counsel's advice. Now, later, he also testified also against counsel's advice. And somewhat strangely, he said on the record that it was not against counsel's advice, even though counsel had just said that it was. Now, this shows that he was either unaware of what counsel's advice actually was or that he was actively detracting from his own ability to mount a defense. And then when the court asked whether he was aware that he could be impeached with his prior convictions if he testified, he again somewhat strangely said nope. And yet no one acted to make sure that he truly understood this or confirmed his understanding, and he went ahead and testified. Now, this again shows he didn't truly understand the nature of the proceedings and that he was actively interfering with his own defense by going against counsel once again. Now, he also said once he did testify that he suffered from bipolarity as well as schizophrenia, two clearly very serious disorders that would have a great deal of impact on his ability to assist in his own defense or understand the proceedings against him. Now, the state- Didn't his attorney seek a continuance for evaluation of some kind? That's also correct, Your Honor, which our position is that that also shows a degree of unfitness because she recognized that there was something going on here, and she specifically asked the trial court in the middle of trial, no less, for a continuance to obtain a mental health evaluation. And that was denied? That's correct. The court summarily denied it without inquiring any further into the request. Now, as the state notes, Mr. Hearn did make some coherent statements from time to time in court. He knew when day 120 was for speedy trial purposes, and he made a reasonably coherent statement at sentencing, showing some remorse for the crime. However, on balance, when you look at the fact that Mr. Hearn was going against counsel's advice at every turn, the fact that he stated from the witness stand that he suffered from two very serious mental disorders, his trial behavior and demeanor in this case strongly shows unfitness. But that's not all we have. As Justice O'Brien just pointed out, his counsel requested in the middle of trial a request for a mental health evaluation. In addition, counsel later stated at sentencing that Mr. Hearn's long history of mental illness suggested that he needed a lesser sentence. Also, we have the fact that the PSI shows that he has prior psychiatric hospitalizations, prior psychiatric diagnoses, and he was at one time evidently prescribed psychotropic medication, and the PSI makes it appear that he probably was not taking it at the time of trial. And finally, we have his mother's extensive testimony at sentencing, indicating that he had fought a long battle with mental illness and explicitly asking the trial court to give this some consideration and stating that what he needed was not further incarceration but help for his mental illness and medication for the rest of his life. As such, there were so many indicia of unfitness in this case, and yet the trial court failed to act. It stripped its duties under the code, and that requires reversal. Let me ask you, didn't he testify at trial that he had anger problems and bipolar and schizophrenic and that this was undoubtedly the genesis of the attack on his girlfriend? That seemed to be the nature of his testimony, that he had problems with bipolarity and schizophrenia in the past. Sometimes he just reacts without necessarily thinking. Does that sound like the testimony, though? This is an expert testifying on his behalf. This is him testifying. Does that sound like the testimony of somebody who doesn't know what's going on around them, unaware of what proceedings are all about? Not necessarily, Your Honor. I mean, it sounds to me like he was responding to questions from counsel. It's not as if he got up and made a long statement on his own, trying to exonerate himself. Counsel asked him what happened. He said that this is what had occurred, and he stated that it likely had something to do with the fact that he has bipolarity and schizophrenia. Neither of those claims is contradicted by anything in the record. In fact, the PSI shows that he had a lot of psychiatric hospitalizations as well as psychiatric diagnoses, indicating that there's actually a lot of support for this claim. In the light of all this, the trial court had a responsibility to look at the totality of the circumstances here and conduct a fitness hearing without proceeding any further. Now, with regard to the Moore and Baltimore issue, Your Honors, the state essentially wants this court to rewrite the Moore decision. Nowhere does Moore say that a trial court, once it becomes aware of a claim of ineffectiveness, can put off the duty of inquiry unless and until the defendant repeats his claim in a different medium once again. Rather, as the state concedes, once the trial court becomes aware of a claim of ineffectiveness, it has a duty to act and perform the appropriate inquiry. Now, Mr. Hearn did that here. Through his counsel, an officer of the court, the trial court was made aware that Mr. Hearn was unhappy with counsel, that he had attempted to fire her, and counsel even stated on the record, Your Honor, I need you to appoint a conflicts attorney in this case because I'm not allowed to argue my own ineffectiveness. Now, if that were not enough, the trial court itself indicated that it understood... Does that sound like somebody who's unfit? Who said the conflicts attorney? That was counsel, Your Honor, who said that. Oh, not the defendant. No, there's no indication that he was making that sort of legal argument. You said defendant. You meant defense attorney. I'm sorry. Excuse me. I misspoke, Your Honor. It was defense counsel who said... Oh, I misheard you. I apologize. One or the other. But it was counsel who stated that. And at that point, the court was required to conduct an inquiry. However, that's not what happened in this case. Instead, the court essentially told Mr. Hearn, I understand that you're challenging counsel's performance. You're not happy with counsel. I'm not going to listen to that right now. What you have to do if you want me to consider a claim of ineffectiveness at this point, you need to put any claims you have in writing, you need to file them within 30 days, and you need to send me a copy. Now, simply put, the court was not authorized to do this. There's nothing under Moore or any other cases in Illinois that allows this sort of behavior. And notably, the state has not cited a single case where anything similar happened. Now, the state does argue that the matter is forfeited because Mr. Hearn did not put anything in writing, as the trial court said, and did not later say anything at sentencing about his claims. However, under Moore, claims of this nature simply cannot be forfeited. In addition, the court was aware of it. It clearly expressed its understanding that he was challenging counsel, and it's not incumbent upon Mr. Hearn to make his claim once again. Excusing the actions of the trial court also would allow courts in Illinois to essentially make up their own minds about whether they want to comply with this rule. The rule as it is makes sense. The court, once it becomes aware, has to act, and that's because it has easy access to the defendant as well as defense counsel. The matter is still fresh in everyone's minds. It can ask appropriate questioning to get at the bottom of whether there's any validity to the claim of ineffectiveness. The state's position would upend this rule and allow trial courts to essentially make up their own rules. And accordingly, if there are no further questions, Your Honors, we ask that this court reverse Mr. Hearn's convictions with respect to the fitness argument and remand him for a new trial or any alternative, a retrospective fitness hearing. With respect to the second argument, we ask that this court remand the cause for an appropriate inquiry. Thank you very much, Your Honors. Thank you, Mr. McNeil. Mr. Nicolosi? Good morning, Your Honors. May I please report? May I please counsel? Your Honors, I will be discussing both issues as well. Regarding the first issue, I'm going to break it up into two parts, the fitness to stand trial and the fitness to be sentenced. The fitness to stand trial, the people believe, is a more clear case. Defendants, you know, basically the only thing that happened at trial to give any kind of evidence that there's a bona fide doubt of his fitness was the defendant's statement, a very self-serving statement that he's had problems with schizophrenia, bipolarity, anger problems. As Justice Schmidt commented, the statement shows that he's clearly aware of his situation, clearly he's in the moment, and he knows he can understand what's happening in the proceedings.  And that's evidence of unfitness. Counsel has not cited anything showing that disagreement with counsel's strategy is evidence of unfitness. In fact, it happens all the time where defendants and counsel don't see eye to eye, of course. And, of course, there's defense counsel's claim, when she first raised the issue to the possible mental issues to the judge, she said that things have come to her attention that may require a shift in the theory of defense and that they may be attacking the mental state issue in this trial. And clearly, Your Honors, this is evidence that she was attempting to put together some kind of affirmative defense, possibly insanity. I don't know if that was the right time for it, but that's neither here nor there. But it doesn't say anything about his fitness, his ability to understand the proceedings and assist the defense. She clearly brought that up solely for purposes of an affirmative defense. You know, the people would submit that there simply is nothing in the record that defendant, you know, could not understand or assist his defense. His testimony is lengthy. It's approximately 20 pages. He gives responsive, clear answers to the questions. And he gives a statement in elocution. Obviously, that wasn't the sentencing part. But there's just nothing in the record in the transcript of the defendant being unfit at that time. And counsel never brought anything up that defendant wasn't fit to stand trial. Two days of the trial had already been completed by the time she first mentioned this. She had lengthy, quote, lengthy discussions with the defendant. She claimed nothing as regards to his fitness to stand trial. Moving on to the fitness to be sentenced fashion portion of this, it's only at this point where defendant's mental history becomes known to the parties after the conviction has already been entered, and that was in the PSI. And there's a few items there, the bipolarity and the oppositional defiant disorder, ADD, and those sorts of things. But the people submit that considering the factors in the Edmunds case, which I cite extensively in my brief, that clearly there was no evidence of any bona fide doubt. One factor to consider is, of course, the behavior and demeanor at trial. I already covered that. And added to that, I guess, is that there have been plenty of pretrial hearings, and obviously two days of this trial, where the defendant never really mentioned anything. Counsel had plenty of opportunities, never mentioned anything. The judge observed both days of the trial and some, I don't know if that was the right judge for the, the same judge for the preliminary hearings, but all of the, both days of the trial, and even the prosecutor mentioned that she didn't observe anything regarding the lack of fitness to stand trial. And then the judge commented as well, he didn't see anything indicating on fitness. Counsel's representations regarding defendants on fitness, as I already mentioned, counsel didn't make any. If they were there, you know, counsel knows the law. Counsel knows that defendants entitled to hearing, if there is a bona fide doubt. She clearly didn't see any indications that this was the case, so she didn't make any representations. Regarding the prior medical opinions, there's really no evidence that these are still a fact. They're all, you know, the only statements made are by the defendant and the defendant's mom that he has these issues. And those are both clearly sources that are, the people would categorize as self-serving, that, you know, he could have, but there's basically no evidence that these conditions still exist besides the defendant's or the mother's testimony. The defendant states in his reply brief that the people are stressing too much regarding the defendant's demeanor and behavior at trial, but the people would submit that what better evidence is there that a defendant is fit to stand trial or be sentenced than looking at his demeanor and behavior at trial. And clearly it's not indicative of a bona fide doubt of fitness in this case. Moving on to issue number two, very briefly, whether or not the court failed to make an adequate inquiry. The people would submit that, you know, as counsel mentioned, that there's nothing, there's no cases that state that, where a judge gave the defendant 30 days or time to file written, but the people would submit that there's nothing saying that this is an inappropriate tactic. The people would argue, as we argued in our brief, that this trial judge actually gave the defendant quite a bit more opportunity than ordinary to present his claims. He had 30 days. In fact, he had four months. He didn't submit his claims at all. He could have taken his time and carefully and thoughtfully wrote out his comments, chose not to do it. All the trial judges are required to do is conduct an inquiry into ineffective assistance claims. Does it matter whether the defendant himself raises the claim or whether defense counsel says, we just had a conversation and he doesn't like me anymore? The people would argue yes, yes, Your Honor. Because when she first mentioned that he had a problem with his counsel, he didn't even say that, well, I guess counsel reiterated his statement that he wished to discharge. But that statement does not indicate that he thought she was ineffective. He simply could have just wanted new counsel. He simply could have wanted to go pro se. There was no indication at that point that he was claiming ineffective assistance. So, yes, the people would argue that that does not trigger the inquiry. Later on, I believe it was after his conviction, when counsel brought it up again saying that she couldn't argue her own ineffectiveness, at that point the people would submit that the issue was put before the trial judge and that the trial judge probably at that point was required to do something. Defense counsel arguing he should have conducted the inquiry at that point. The people argue that the defendant absolutely was not prejudiced by the trial judge giving the defendant more time to articulate his claims and submit them to the court, which he never did. So the people would submit that he had an ample opportunity to have a hearing and set forth his claims, but he failed to do so. I mean, this is certainly different than any reported cases. So to that extent, your case of first impression might be too strong a term. I don't know because we're, but the issue then is did the judge satisfy his duty to inquire? Well, first of all, you agree he had a duty to inquire, and if he did, then just tell the defendant to go back and write him a letter. Satisfy that duty. People submit, Your Honor, that it does. I guess the other two options, he could have asked for the defendant to speak in open court and give his reasons why he thought his counsel was ineffective. Would you at least give me that that would be certainly the easiest and most direct and most expeditious way to attack him? Certainly, Your Honor. But the people are saying that what he did just wasn't any kind of reversible error in this case because he still afforded the defendant an opportunity to bring his claims. Yes, it was definitely, Your Honor, a little bit a different way of going about things. I had never seen it quite yet. But the people are arguing that there's just absolutely no prejudice there. Nothing happened in between the conviction and the post-trial hearings, you know, where a defendant was prejudiced that, you know, he was proceeding with the same attorney that maybe he didn't want. He had a chance to put forth his claims and he just didn't do it. Are we certain that he's literate, that he's capable of writing? Well, Your Honor, maybe not, but there's nothing in the record to indicate that he wasn't. He was clearly participating in the trial. He was on witness stand for an extensive period of time. It certainly appeared that he was able to do that. And to that end, Your Honor, the defendant didn't, when the judge made this offer to put them in writing, the defendant did not say that he could not key the judge's order in that case. So the people, you know, would have to submit that he was capable of doing that or else he would have said that he wasn't capable of doing that. Are there no other questions? Okay, thank you, Mr. Mangarossi. Mr. McNeil, some rebuttal? Greatly, Your Honor. Thank you. In this case, we have Mr. Hearn giving unrebutted testimony that he suffers from two serious psychological disorders, at least. That's supported by the PSI in this case. Now, to hold that against him as evidence of his fitness would turn the inquiry on its head, Your Honor. To suggest that because he stated that I have bipolarity and schizophrenia, that that means that he's actually fit, really doesn't make any sense under the law. As for this just being a matter of strategic decisions, as far as disagreements with counsel, that's not all we have. We have him indicating that he didn't understand that it was against counsel's advice that he not testify. We have him not understanding the ramifications of testifying. We have a lot of indications in the record that he did not understand the precise nature of the proceedings against him. And as for counsel's statements... Let me just ask you one. So would you agree or would you... The existence, you know, the prior diagnoses of these two serious mental disorders on their face, I mean, that alone doesn't create a bonafide, just by themselves. I don't think it does by itself, Your Honor. That's true. However, that's not all we have. We have that. We have his discord with his counsel, his actively detracting from his own defense at every turn, his inability to understand what's going on. We have his mother testifying to, you know, bolstering essentially what the PSI said about his long history of mental illness. And as far as counsel's statements, the state is correct that counsel didn't couch it in terms of fitness. However, you'll notice in the briefs we are arguing in the alternative that counsel was ineffective for failing specifically to request a fitness hearing, in this case, due to so many indicia of unfitness. And in addition, the important thing here is that the trial court was made aware that there was a problem with Mr. Hearn's mental health. Those are the terms that counsel used. And at that point, due to its important gatekeeping function under the code, it should have acted to at least make sure that there was no problem here. Simply assuming that it wasn't a problem was an improper action. And as far as the court made aware of that, when did that happen? Well, it was made aware, obviously, of the request when it happened. But by that time, it had also seen some discord between Mr. Hearn and trial counsel. I don't understand. Made aware of the request when it happened. I mean, when it heard the request for a mental health evaluation, then it was made aware that there was a possible mental health issue. But counsel talked to the judge before the trial began and said they were going to be disputing the mental state, the element of the offense. That's correct, Your Honor. And then when it was time for the defense to put on their testimony, she asked for a continuance for a psychologist or psychiatrist. That's correct. Regarding mental state. Catherine, did you mention mental state? That's true. As an element of the offense. Right. So do you think that request should have triggered the trial judge to start thinking about fitness? I think it should have told the trial court that something's up here. That even though she was speaking in terms of the mental state, I think she said something along the lines of, my client just told me something that makes me think we need to get a mental health evaluation in here. Shift the focus, or she used the word shift. Right, shift the defense or something along those lines. It's true that that does seem to speak specifically to the nature of the defense, but it's also showing that something just happened in the courtroom, no less, that makes counsel think that something's going on with Mr. Hearn. And then when the request for continuance was denied, it's a pretty good method of getting a continuance by? Filing a motion for one. Asking to have it returned by. Well, that also happened later. That's true. It happened immediately after the request for continuance. That's correct. That request was made. And then when the defendant testified, that's really the first time the court learned he had bipolar disorder, wasn't it? That's the first mention of it. That was the third day of trial. That's correct, Your Honor. With less than 60 minutes of testimony left. That's correct. But the code requires that the trial court act at any time during the proceedings. It can happen at sentencing. It can happen at any time during the proceedings. Once the court becomes aware of a bona fide doubt, it has to act. And that's why the state's additional argument that all this stuff coming out at sentencing means that we don't have to worry about the trial is incorrect. At any time a bona fide doubt arises, the trial court must act and conduct a hearing. And the PSI shows these longstanding difficulties, as does Mr. Hearn's mother's testimony, casting a serious doubt over trial as well. And with regard to the Moore and Baltimore issue, as Justice Schmidt pointed out, the court had a great opportunity, as is always required under the case law, to inquire into the issue and resolve it at the time it became aware of it. It didn't do so in this case, and there's no legal basis for excusing that. How many times should he resolve it during trial? Let's say he resolved it when counsel said, okay, we didn't get the continuance, he wants to fire me. Well, at that point, that was, trial hadn't even ended yet. That's not the focus of our concern, Your Honor. Let's say the judge says to him then, okay, what aren't you happy with? And he resolves it. If it happens again during trial. Well, I think at that point, if the trial court is conducting appropriate inquiries when it becomes aware of the problem, then certainly there's no issue. But that's not what happened here. We have, the first thing that happened during trial, asked to fire counsel. The court says, it's the ninth inning of the game here, we're not going to stop. I think that was appropriate. But then when we get to the point of post-trial, when defense counsel is specifically telling the court, I can't be on this case anymore because I can't argue my own ineffectiveness, I don't think it could be much clearer that there's an issue of ineffectiveness being claimed. And the trial court's own comments show that it understood this when it said that, I know you're upset with counsel. And accordingly, if there are no further questions, we ask that you reverse Mr. Hearn's convictions and remain for an appropriate inquiry. Thank you very much. All right, thank you, Mr. McNeil, Mr. Nicolosi. Thank you both for your arguments here this morning. The matter will be taken into advisement with the disposition will be issued. Right now, we'll be at recess.